PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| KAELYN SWEGAN, | ) | |
| | ) | CASE NO. 4:11CV02179 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| SHEPHERD OF THE VALLEY | ) | |
| LUTHERAN RETIREMENT SERVICES, | ) | |
| INC. | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Resolving ECF Nos. 18, 20] |

Plaintiff Kaelyn Swegan brings this lawsuit against her former employer, Defendant Shepherd of the Valley Lutheran Retirement Services, Inc. ("Shepherd").  Swegan claims that she was discharged from her employment in violation of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq., and Ohio's discrimination law.  The Court is called upon to resolve cross-motions for summary judgment filed by Shepherd and Swegan.  Shepherd asserts it is entitled to summary judgment because it properly discharged Swegan for violating its no-fault attendance policy.  ECF No. 18.  Swegan maintains that she is entitled to partial summary judgment with respect to her FMLA claims because Shepherd interfered with her rights under the Act and because it discharged her in retaliation for seeking FMLA leave.  ECF No. 20.  The Court has considered the parties' briefs, exhibits, and the controlling law.  For the reasons provided below, the Court denies, in part, and grants, in part, Shepherd's motion for summary judgment. Swegan's motion for summary judgment is denied in its entirety.

(4:11CV02179)

# I. Factual and Procedural History

### a. Factual Background

Shepherd is a not-for-profit corporation that operates several retirement care facilities in Ohio. ECF No. 18-9 at 3-4.  In September, 2006, Shepherd hired Swegan for the position of dietary aide (ECF No. 18-5), a job that required her to wash dishes, prepare food, clean tables and serve residents. ECF No. 18-1 at 15.  Although Swegan was hired on a part-time basis, she often worked full-time hours. ECF No. 18-1 at 14.  Swegan accepted the job directly after high school (ECF No. 18-1 at 18) as a means to pay for additional schooling. ECF No. 18-1 at 86.

In the course of her employment, Swegan received an employee Handbook that outlined Shepherd's workplace policies and procedures.  The Handbook described Swegan's rights and responsibilities in various facets of her employment, including instructions on how to seek medical leave under the FMLA. ECF No. 18-9 at 31-33.  The Handbook also detailed Shepherd's internal attendance policy. ECF No. 18-9 at 40-42.  Under this policy, an employee will be discharged if he or she incurs twelves absences within a rolling 365-day period. ECF No. 18-9 at 40.  The Handbook defined "absences" in this manner:

> If you miss 1 day of work, that is considered 1 'absence.'  If you miss 2 consecutive days in a row, it is still considered 1 'absence.'  But if you miss 3 days consecutively it is considered 2 'absences.'  If an employee works less than half of their [sic] shift, it is considered an 'absence.'

ECF No. 18-9 at 40.

The parties agree that as of August 19, 2009, Swegan had incurred nine absences under Shepherd's attendance policy. ECF Nos. 18 at 4-5; 23 at 3.  On August 21, 2009, a day in which Swegan was not scheduled to work, she was admitted to the emergency room of St. Elizabeth hospital

2

(4:11CV02179)

for an allergic reaction to amoxicillin and cold medicine.  ECF No. 18-1 at 21, 26.  Swegan was

prescribed medication and released several hours later.  ECF No. 18-1 at 21.  The following morning,

on August 22, 2009, Swegan claims that her condition deteriorated.  She suffered from hives; her

ears, nose, eyes, tongue and lips were swollen; and she had difficulties seeing and breathing.  ECF

No. 18-1 at 22.  Swegan called her supervisor to give notice that she would not be able to work that

day, and returned to the hospital for treatment.  ECF No. 18-1 at 22-23.  Swegan was given

intravenous medication, prescribed steroids and Benadryl, and released on the same day.  ECF No.

18-1 at 23-26.  Her treating physician, Dr. Milton Parodi, issued a "patient excuse" slip stating that

"Swegan was seen on 8/22/2009 as is excused from work from 8/22/2009 through 8/24/2009."  ECF

Nos. 18-1 at 25; 18-12.  According to Swegan, she was given the patient excuse slip  because she

would have been unable to work in a "hot, sticky, washing dishes environment" as a consequence of

her hives.  ECF No. 18-1 at 25.  Swegan claims that she submitted this form to Shepherd on two

occasions.  ECF No. 18-1 at 29-30.  Shepherd disputes this.  ECF No. 24 at 4.

Swegan ultimately did not report to work on August 22, 23 or 24, 2009.  ECF No. 23 at 3.

On August 24, 2009, Swegan's mother, who also worked at Shepherd, obtained a FMLA request

form from Shepherd's human resources office and provided it to Swegan, who executed it that day.

ECF Nos. 18-1 at 30-31; 18-5.  Swegan was not scheduled to work on August 25, 2009, but she

returned to work on August 26 and 27, 2009, and worked her scheduled shifts on those days.[1]  On

---

[1] Although Swegan testified at her deposition that Shepherd sent her home early on
August 27, counsel for both parties take the position that she is mistaken.  According to counsel,
Swegan worked her scheduled shift on August 27, 2009, and was sent home early the next day,
August 28, 2009.  ECF Nos. 18 at 6 n.4; 20 at 4.  This is supported by Swegan's personnel
records, which indicate that Swegan worked only 2.25 hours on August 28, 2009.  ECF No. 18-

3

(4:11CV02179)

August 26, 2009, Brenda Montone, Shepherd's human resources director, executed an "Employer Response" denying Swegan's request for FMLA leave on the ground that Swegan failed to support her request by returning a medical certification.  ECF No. 18-6.  It is unclear when Swegan received the Employer Response.  In any event, on the morning of August 28, 2009, shortly after Swegan reported for work, Montone contacted Swegan by phone and informed her that Shepherd would not grant the FMLA request without a medical certification.  ECF No. 18-1 at 39.  Montone permitted Swegan to obtain and submit the certification following Swegan's next medical appointment on August 31, 2009.  ECF No. 18-1 at 43.  Montone also instructed Swegan to leave work because she had not supplied Shepherd with a fitness-for-duty certification upon her return to employment.  ECF No. 18-1 at 35, 39; *see* ECF Nos. 20 at 8; 22 at 8.

Swegan did not return to work after August 28, 2009.  ECF No. 18-1 at 44.  On August 31, 2009, Swegan was examined by Dr. Ajay Bhardwaj, to whom Swegan had been referred by the emergency room physician who treated her.  ECF No. 18-1 at 46.  Dr. Bhardwaj prepared a medical certification that was delivered to Shepherd and reviewed by Montone.  ECF Nos. 18-7; 20-1 at 37-44.  The certification conveyed that Swegan was *currently* able to perform her job functions, and recommended her return for full duty.  ECF No. 18-7.  Montone determined, however, on the basis of the certification, that Swegan was able to perform her job functions *from August 22 to August 24, 2009*, and, therefore, Swegan was not entitled to FMLA leave for those dates.  ECF No. 20-1 at 49.  Montone also determined that, as a result of the FMLA denial, Swegan had accumulated sufficient

_____

10.  Thus, the Court will treat Swegan's testimony regarding her early departure as occurring on August 28, 2009, and not on the 27th.

4

(4:11CV02179)

absences to justify her discharge from employment.  ECF No. 20-1 at 54, 56.  Thereafter, Montone

terminated Swegan's employment, effective August 31, 2009.  ECF Nos. 20-1 at 23; 20-4 at 2.

### b. Procedural History

Swegan instituted this lawsuit in the Mahoning County Court of Common Pleas on September

1, 2011.  ECF No. 1-1 at 1.  Shepherd then removed the action to this Court, invoking this Court's

jurisdiction over questions of federal law.  28 U.S.C. § 1331; 28 U.S.C. § 1441.  Swegan pursues two

theories of recovery under the FMLA: first, that Shepherd interfered with her right under the FMLA

to take protected leave from work even though she had a serious health condition; and second, that

Shepherd took retaliatory action against her for asserting her right to FMLA leave.  ECF No. 1-1 at

1-3.  Swegan also alleges that Shepherd discriminated against her by discharging her on account of

her "handicap and/or perceived handicap" in violation of R.C. 4112.02.  ECF No. 1-1 at 3.

Shepherd moved for summary judgment on all of Swegan's legal claims.  ECF No. 18.

Swegan then moved for partial summary judgment with respect to her FMLA claims.  ECF No. 20.

The parties filed corresponding opposition briefs and replies.  ECF Nos. 22, 23, 24 and 25.  The

motions are ripe for the Court's review and adjudication.

## II. <u>Legal Standard</u>

The summary judgment procedure is "designed to secure the just, speedy and inexpensive

determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L.

Ed. 2d 265 (1986) (quotations omitted).  "Summary judgment is appropriate only 'if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled judgment as

a matter of law.'"  *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (*quoting*

(4:11CV02179)

Fed. R. Civ. P. 56(a)). "'A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party.'" *U.S. ex rel. Wall v. Circle C Construction, LLC,* *697 F.3d 345, 351 (6th Cir. 2012)* (*quoting Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006)). A court deciding a motion for summary judgment must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, *475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).* "Where the moving party carries its initial burden, the nonmoving party 'may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Ellington v. City of East Cleveland,* *689 F.3d 549, 552 (6th Cir. 2012)* (*quoting Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009)).

Cross-motions for summary judgment are examined under the usual Rule 56 standards, and a court "must evaluate each motion on its own merits and view all the facts and inferences in the light most favorable to the non-moving party." *Spectrum Health Continuing Care Group v. Anna Marie* *Bowling Irrecoverable Trust*, *410 F.3d 304, 309 (6th Cir. 2005)* (quotations omitted).

### III. Discussion

**A. Shepherd's Motion for Summary Judgment (ECF No. 18)**

#### 1. FMLA-Interference Claim

##### (a)

Shepherd first argues that it is entitled to summary judgment on Swegan's FMLA-interference claim because Dr. Bhardwaj's medical certification proves that Swegan did not have a serious health condition and was capable of performing her job functions. ECF No. 18 at 9-11. Because Swegan's

(4:11CV02179)

absences were not protected by the FMLA, claims Shepherd, those absences could be counted against Swegan in determining whether she could be discharged under Shepherd's internal attendance policy. ECF No. 18 at 12.

The FMLA entitles qualifying employees to twelve weeks of unpaid leave each year if an employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  Among other reasons, the FMLA was enacted on the basis of Congress's finding that there is "inadequate job security" for employees who have serious health concerns that prevent them from working for temporary periods.  29 U.S.C. § 2601(a)(4).  "The FMLA 'accommodates the important societal interest in assisting families by establishing minimum standards for leave.'"  Cavin v. Honda of America Manufacturing, Inc., 346 F.3d 713, 719 (6th Cir. 2003) (quoting H.R. Rep. No. 103-8(I), 103d Cong., 1st Sess. 1993, at *21).

One way in which the FMLA protects qualified employees is that it "prohibits an employer from counting FMLA leave against an employee under its 'no fault' attendance policy."  Novak v. Metrohealth Medical Center, 503 F.3d 572, 577 (6th Cir. 2007); see 29 C.F.R. § 825.220(c).  To enforce the rights set forth in the Act, the FMLA provides a private right of action to employees under two different theories. See 29 U.S.C. § 2617(a). Under the "interference" or "entitlement" theory, employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided under the FMLA.  29 U.S.C. § 2615(a)(1); see Branham v. Gannett Satellite Information Network, Inc., 619 F.3d 563, 568 (6th Cir. 2010).  Under the "retaliation" or "discrimination" theory, employers may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA.  29 U.S.C. § 2615(a)(2); see

7

(4:11CV02179)

*Branham*, at 568.  The key distinction between an interference and a retaliation claim is that the motive behind the employer's conduct is not relevant to an interference claim.  *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 Fed. Appx. 330, 338 (6th Cir.), *cert. denied*, __ U.S. __, 130 S. Ct. 418, 175 L. Ed. 2d 272 (2009).  The pertinent concern in analyzing an interference claim is, rather, whether an FMLA right was violated.  *Grace v. USCAR*, 521 F.3d 655, 669 (6th Cir. 2008).

In order to succeed on a FMLA-interference claim in the Sixth Circuit, a plaintiff must demonstrate that: (1) she was an eligible employee;[2] (2) the defendant was an employer within the meaning of the FMLA;[3] (3) she was entitled to leave under the FMLA; (4) she properly gave notice to the defendant of her intention to take leave; and (5) the defendant denied her the FMLA benefits to which she was entitled.  *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).  Shepherd concedes that it met the definition of "employer" under the FMLA, that Swegan was an eligible employee and that Swegan properly gave notice to Shepherd of her desire to take FMLA leave.  ECF No. 18 at 8.  The only issues in contention, therefore, are whether Swegan was entitled to FMLA leave and whether Shepherd unlawfully denied her that benefit.  ECF No. 18 at 8.

Swegan can establish her entitlement to FMLA leave if she demonstrates that she had a "serious health condition" that made her "unable to perform the functions of" her position.  29 U.S.C. § 2612 (a)(1)(D).  The term "serious health condition" is defined in the Act as "an illness, injury,

---

[2] Under the FMLA, an "eligible employee" is one who has been employed "for at least 12 months by the employer to whom leave is requested," and for "at least 1,250 hours of service with such employer during the previous 12-month period."  29 U.S.C. § 2611(2)(A).

[3] An "employer" within the meaning of the FMLA means "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year . . . ."  29 U.S.C. § 2611(4)(A).

8

(4:11CV02179)

impairment, or physical or mental condition that involves . . . (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).  To properly examine these terms, the Court must look to the regulations promulgated by the Department of Labor, which "clarify an employee's rights and responsibilities under the act"; *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 554 (6th Cir. 2006); and must be "given considerable weight." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86, 122 S. Ct. 1155, 152 L. Ed. 2d 167 (2002).  "Inpatient care" is defined by the regulations as "an overnight stay in a hospital" and, because Swegan was not required to stay overnight during any of her hospital visits, that definition is not relevant here. 29 C.F.R. § 825.114.  The regulations define "serious health condition involving continuing treatment by a health care provider" as encompassing the following requirements: (1) a "period of incapacity of more than three consecutive, full calendar days"; (2) "[t]reatment two or more times, within 30 days of the first day of incapacity" by a health care provider; (3) the treatments occur during in-person visits to the health care provider; and (4) the first in-person treatment takes place within seven days of the first day of incapacity. 29 C.F.R. § 825.115(a).  "Incapacity" refers to the inability to perform the functions of the position, which, in turn, means "unable to work at all . . . or unable to perform any one of the essential functions" of the position. 29 C.F.R. § 825.123(a); *see Branham v. Gannett Satellite Information Network, Inc.*, 619 F.3d at 569.  Shepherd does not dispute that Swegan made two in-person visits to the hospital immediately after the commencement of her claimed incapacity.  Shepherd argues, however, that the medical certification unambiguously proves that Swegan was not incapacitated. ECF No. 18 at 12.

9

(4:11CV02179)

The Court rejects Shepherd's interpretation of the medical certification.  The certification reveals, quite plainly, that Dr. Bhardwaj's assessment was directed at Swegan's *current* condition as of August 31, 2009, the day he examined her, and not her *earlier* condition for which she had sought medical leave.  In particular, Montone testified that she denied FMLA leave on the basis of Dr. Bhardwaj's negative response to the question, "*Is* the employee unable to perform any of his/her job functions due to the condition"?  ECF Nos. 20-1 at 44 (emphasis added); 18-7 at 2.  This response does not shed light on whether Swegan could perform her job functions during the period of her claimed incapacity.  Similarly, Dr. Bhardwaj also answered "No" in response to the questions, "*Will* the employee be incapacitated for a single continuous period of time due to his/her medical condition . . . ?" and "*Will* the employee need to attend follow-up treatments or work part-time or on a reduced schedule because of the employee's medical condition?"  ECF No. 18-7 at 3 (emphases added).  Nothing in the certification indicates that Swegan could have performed her job functions during the period for which she sought leave.  If anything, the certification strongly suggests that Dr. Bhardwaj believed Swegan was unable to work as a result of her allergic reaction.  In response to the question, "Is it medically necessary for the employee to be absent from work during the flare-ups," Dr. Bhardwaj responded "Yes," explaining that if Swegan "has reaction to medicine, [she] will need to seek medical attn."  ECF No. 18-7 at 3.  Directly below that comment, Dr. Bhardwaj wrote that Swegan could be expected to have flare-ups "only if pt was to take PCN or OTC cough syrup."  ECF No. 18-7 at 3.  Finally, in the final page of the certification, Dr. Bhardwaj wrote that "Pt had anaphylactic reaction to PCN or OTC cough syrup.  Pt is stable, no further tx is required *so long [as] pt does not consume PCN or OTC syrup* . . . . No restriction for work, return for full duty."  ECF No.

(4:11CV02179)

18-7 at 4 (emphasis added).  Therefore, the medical certification, on the whole, fairly conveys that although Swegan was able to return to work on August 31, 2009, her reaction to "PCN or OTC cough syrup" would require medical attention and absence from work.  Shepherd's claim that the medical certification is "clear and unambiguous" is not supported by the record.  ECF No. 18 at 12.

In addition, Dr. Bhardwaj's assessment that Swegan's condition lasted "2-5 days" (ECF No. 18-7 at 2) is consistent with Swegan's testimony that she first experienced the reaction on August 21, 2009.  ECF No. 18-1 at 20.  Swegan testified that her symptoms, although they gradually improved, persisted through August 24, 2009.  ECF No. 18-1 at 27-28.  The patient excuse slip issued by Dr. Parodi, the physician who examined Swegan on August 22, 2009, reflects his medical judgment that Swegan should not be at work until after August 24, 2009.[4]  Viewing Swegan's testimony and the supporting medical documentation in the light most favorable to her, as the Court must in resolving this motion, the evidence establishes a genuine issue of material fact in regard to whether Swegan was incapacitated for more than three consecutive calendar days.  *See Branham v. Gannett Satellite Information Network, Inc.*, 619 F.3d at 570 (genuine issue as to whether plaintiff was incapacitated may be established by lay testimony supported by medical documentation).

Accordingly, the Court concludes that Swegan has demonstrated a genuine issue of material fact with respect to whether she had a "serious health condition" within the meaning of the FMLA.

---

[4] Shepherd contends that the patient excuse slip issued by Dr. Parodi does not create an issue of fact because Shepherd never received this document and because the document does not identify any medical condition.  ECF No. 24 at 3-5.  Shepherd is mistaken.  First, whether Shepherd ever received this document is not relevant to the question of whether Swegan had a serious medical condition.  Second, even though the slip does not identify any medical condition, when viewed in conjunction with the other evidence, the document offers support for Swegan's claim that she was incapacitated for more than three days.

(4:11CV02179)

(b)

Shepherd next argues that it lawfully denied leave based on the only information at its disposal–the medical certification. Shepherd claims that the certification (1) failed to adequately show that Swegan was unable to perform her job functions (ECF No. 18 at 12); (2) did not disclose that Swegan received treatment on August 21, 2009, (ECF No. 24 at 6); and (3) was a "negative medical certification." ECF No. 24 at 7.

For the reasons already discussed, the Court rejects Shepherd's claim that the certification was "negative," that is, one demonstrating that Swegan did not have a serious health condition entitling her to FMLA leave. Although the Sixth Circuit has held, in an unpublished opinion, that an employer may deny FMLA leave based upon a certification facially demonstrating that an employee need not have been absent from work; *see Nawrocki v. United Methodist Retirement Communities, Inc.*, 174 Fed. Appx. 334, 338 (6th Cir. 2006); Dr. Bhardwaj's certification is not of that ilk.[5] The Court thus turns to Shepherd's remaining claims that the certification is otherwise inadequate because it did not supply the information necessary for Shepherd to determine whether leave should be granted.

An employee who has a serious health condition is not bestowed unconditional rights under the FMLA. "To garner its benefit, an employee must abide by the conditions provided in 29 U.S.C. § 2613, which provides, *inter alia*, that an employer may require an employee to submit a doctor's certification of the employee's condition." *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d

_____

[5] Because the Court has determined that Dr. Bhardwaj's certification is not a "negative" certification, it need not consider Swegan's argument (ECF No. 23 at 9-10) that an employer must wait the entire fifteen days prescribed under 29 C.F.R. § 825.305(b) before denying leave on the basis of a "negative" certification–an unsettled issue in the Sixth Circuit. *See Branham v. Gannett Satellite Information Network, Inc.*, 619 F.3d at 572.

(4:11CV02179)

at 554.  A doctor's certification is sufficient if it states (1) the date on which the serious health

condition began, (2) the probable duration of the condition, (3) the appropriate medical facts within

the health care provider's knowledge, and (4) a statement that the employee is unable to perform her

job duties.  *Novak v. Metrohealth Medical Center*, 503 F.3d at 578 (*citing* 29 U.S.C. § 2613(b)).

> Where the medical certification is either incomplete or insufficient, the regulations provide:
>
> The employer shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient.  A certification is considered incomplete if the employer receives a certification, but one or more of the applicable entries have not been completed.  A certification is considered insufficient if the employer receives a complete certification, but the information provided in vague, ambiguous, or non-responsive.  The employer must provide the employee with seven calendar days (unless not practicable under the particular circumstances despite the employee's diligent good faith efforts) to cure any such deficiency.  If the deficiencies specified by the employer are not cured in the resubmitted certification, the employer may deny the taking of FMLA leave, in accordance with § 825.313.

29 C.F.R. § 825.305(c).  Dr. Bhardwaj's certification may fairly be characterized as "insufficient."

It is vague, ambiguous, or non-responsive as to whether Swegan was incapacitated during the period

for which she sought leave, and as to the precise duration of her condition.  Yet, Shepherd neither

provided Swegan with a written statement of what would render the certification sufficient, nor

allowed her seven days to cure the deficiency.  Instead, immediately after it received the certification,

Shepherd denied FMLA leave, assessed the days against Swegan, and terminated her employment.

Shepherd could not deny leave on the basis of an insufficient certification without adhering

to the procedure set forth in 29 C.F.R. § 825.305(c).[6]  As the matter currently stands, Swegan is

---

[6] Swegan's testimony that she also submitted Dr. Parodi's patient excuse slip, which the Court accepts as true for the purposes of deciding this motion, bolsters the notion that Shepherd's interpretation of the medical certification was unwarranted.  But, even had Shepherd not received the patient excuse slip, its decision to deny leave still violated the applicable

(4:11CV02179)

entitled to a trial as to whether Shepherd interfered with her right to take FMLA leave. Shepherd's motion for summary judgment is denied as to the FMLA-interference claim.[7]

### 2. FMLA-Retaliation Claim

Shepherd also asserts that it is entitled to summary judgment in its favor on Swegan's FMLA-retaliation claim. ECF No. 24 at 14. Shepherd reiterates that it terminated Swegan's employment because she violated the attendance policy, not because she attempted to seek FMLA leave. ECF No. 22 at 18. Simply, claims Shepherd, there is no evidence of a retaliatory motive on its part.[8]

A claim that an employer discriminated or retaliated against an employee for invoking FMLA rights may be established with direct or indirect evidence. Direct evidence is evidence which, if believed, requires the conclusion that unlawful discrimination was a motivating factor in the employer's action. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008). Such evidence "does not require a factfinder to draw any inferences" in order to conclude that the challenged employment action was motivated at least in part by prejudice. *Id.* (quotations omitted).

---

regulation.

[7] The Court declines to address, beyond what has already been written, Swegan's argument that Shepherd failed to provide various notices to Swegan of her rights and responsibilities under the Act, including Swegan's duty to submit a medical certification and a fitness-for-duty certification. ECF No. 23 at 12. Further determination of these issues is unnecessary to the adjudication of Shepherd's motion.

[8] Shepherd's alternative argument that Swegan fails to bring a claim for FMLA-retaliation in unavailing. ECF No. 24 at 14. The complaint sufficiently placed Shepherd on notice of this cause of action. *See* ECF No. 1-1 at 2-3 (alleging that Shepherd's acts were "discriminatory" and "an employee may not be discharged or 'in any other way discriminated' against in retaliation for asserting their rights to FMLA leave"). "Under our system of notice pleading a complaint need only provide the defendant [with] fair notice of what the . . . claim is and the grounds upon which it rests." *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 446 (6th Cir. 2007) (quotations omitted).

14

(4:11CV02179)

The evidence must establish "not only that the . . . employer was predisposed to discriminate on the basis of [the FMLA], but also that the employer acted on that predisposition." *Id.* (quotations omitted). After an employee presents such evidence, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the motive. *Id.*

Absent direct evidence of unlawful conduct, FMLA-retaliation claims are evaluated according to the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). A plaintiff satisfies a *prima facie* case by showing that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected activity. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). The plaintiff's burden of proof at the prima facie stage is merely to present evidence from which a jury could conclude that the plaintiff suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination, a burden which has been described as "minimal." *Id.* at 570-71. If the plaintiff satisfies the prima facie elements, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 570. If the defendant succeeds, the burden shifts back to the plaintiff to prove that the defendant's proffered reason is a pretext for unlawful discrimination or retaliation. *Id.* at 570. The defendant's burden has been described as one of production, while the ultimate burden to persuade the jury that the defendant intentionally discriminated or retaliated against the plaintiff remains at all times with the plaintiff. *Id.*

Shepherd does not specify which framework governs the evaluation of Swegan's claim. The only argument offered by Shepherd in its briefing of this issue is that it properly discharged Swegan

15

(4:11CV02179)

because she accrued twelve absences under its attendance policy.  ECF Nos. 24 at 14; 22 at 18. Without deciding which framework will ultimately apply, the Court concludes that the manner in which Shepherd counted the final absences against Swegan, when viewed in a manner most favorable to her, establishes a genuine issue regarding whether Shepherd had a retaliatory motive.

The parties agree that Swegan had nine absences on August 19, 2009, and was three absences shy of automatic termination.  After denying Swegan's FMLA request, Shepherd assessed the three days for which Swegan sought leave as absences.  It did so, however, on the basis of an unreasonable interpretation of the medical certification.  At her deposition, Montone testified that she denied leave to Swegan on the basis of Dr. Bhardwaj's negative answer to the question, "Is the employee unable to perform his or her job functions due to the condition?"  ECF No. 20-1 at 44.  Montone *admitted* that the response revealed nothing about whether Swegan was able to perform her job functions from August 22 to 24, 2009.  ECF No. 20-1 at 44.  Yet, Montone justified her decision by stating, "[t]his information supplied indicated to me that she did not need to be off of work in order to perform her job functions."  ECF No. 20-1 at 49.  A reasonable fact-finder may infer a furtive motive from Montone's contradictory testimony.  Furthermore, Montone terminated Swegan upon receiving the certification without explaining to Swegan why the certification was insufficient, and without providing her with an opportunity to cure the insufficiency despite the applicable regulation.

In addition, Swegan correctly points out that even had Shepherd properly denied FMLA leave, the three days during which Swegan was absent would have constituted only two absences under Shepherd's attendance policy.  ECF No. 23 at 3.  Therefore, Swegan would have accumulated only eleven absences as a result of the FMLA denial, which is short of the twelve required for automatic

16

(4:11CV02179)

discharge. In response, Shepherd argues that Swegan's failure to work full shifts on either August 20 or 28, 2009, serves as the twelfth absence. ECF No. 24 at 2.

Swegan's personnel records indicate that on August 20, 2009, the day before she experienced the allergic reaction, she worked five hours of an eight-hour shift. ECF No. 18-10. Shepherd's policy considers an employee's failure to work to a full shift an absence only if the employee works less than half of the shift. ECF No. 18-9. Because Swegan worked more than half her shift that day, an absence could not have been assessed against her.

On August 28, 2009, Swegan left work after only working 2.25 hours. ECF No. 18-10. According to Swegan, Montone instructed her to leave work that morning because Swegan had not returned a fitness-of-duty certification. ECF No. 18-1 at 35, 39. The regulations provide that an employer may institute a policy requiring, as a condition of returning to work, that all similarly-situated employees who take FMLA leave submit a certification that he or she is able to resume work. 29 C.F.R. § 825.312(a). Although this requirement is mentioned in the employee Handbook (ECF No. 18-9 at 32), Swegan's FMLA request had been *denied*. Nothing in the Handbook required employees returning from non-FMLA leave to submit a fitness-for-duty certification, nor did the Handbook specify that an absence will be assessed when such certification is not provided. Moreover, Swegan was already working on August 28th before she was sent home, and had already worked full shifts during the previous two days. Because: (1) Shepherd instructed Swegan to go home on August 28, 2009; (2) there was no firm basis for Shepherd to assess that departure as an absence; and (3) Swegan arguably had already demonstrated her fitness by returning to work days earlier and completing her shifts without incident, the Court concludes that Shepherd's behavior may

17

(4:11CV02179)

be construed by a reasonable fact-finder as evidence of an unlawful motive.

The record establishes a genuine issue of material fact as to whether Shepherd possessed impermissible motives in assessing Swegan's final three absences, and, ultimately, discharging her. Shepherd is not entitled to summary judgment with respect to Swegan's FMLA-retaliation claim.

### 3. State Discrimination Claim

Shepherd finally argues that Swegan cannot prevail on her State-law claim alleging that she was discriminated against on the basis of a disability or perceived disability. The Court agrees.

Ohio's R.C. § 4112.02(A) prohibits an employer from discriminating on the basis of a person's disability "with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio's framework for evaluating a discrimination claim is similar to the *McDonnell Douglas* framework. To establish a prima facie case of discrimination, the plaintiff must demonstrate (1) that he or she had a disability, (2) that an adverse employment action was taken by an employer, at least in part, because the plaintiff was disabled, and (3) that the plaintiff, although disabled, can safely and substantially perform the essential functions of the job in question. *Hood v. Diamond Products, Inc.*, 74 Ohio St. 3d 298, 302, 658 N.E.2d 738 (1996). If the plaintiff is successful, the burden shifts to the employer to set forth a legitimate, nondiscriminatory reason for the action. *Id.* If the employer meets that burden, the plaintiff must then prove that the employer's stated reason was a pretext for impermissible discrimination. *Id.* This framework applies to a discrimination claim based upon a perceived disability, as well. *See* R.C. § 4112.01(A)(13) (perception of disability included within definition of "disability").

18

(4:11CV02179)

Swegan admitted in her deposition that she did not have a disability at the time of the events at issue. ECF No. 18-1 at 73. Swegan claims, however, that Shepherd perceived her as being disabled. Swegan maintains that Shepherd (1) failed to advise her that she needed to submit a fitness-for-duty certification at the time she requested FMLA leave; (2) refused to permit her to continue working without first submitting the certification; and (3) used her absence as a basis to terminate her employment–all because Shepherd perceived her as being disabled. ECF No. 23 at 14.

There is no evidence that Shepherd ever perceived Swegan as possessing a disability. R.C. § 4112.01(A)(13) defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities . . . ." Nothing in the record even remotely suggests that Swegan had, exhibited, or caused anyone to believe that she was substantially limited in a major life activity. There is, similarly, no evidence that Montone or any other Shepherd employee was under the misapprehension that Swegan was so limited. Rather, the record shows that Swegan suffered from a one-time allergic reaction to medication. She returned to work on August 26, 2009, several days after she first experienced her symptoms. There is no basis for the State discrimination claim to proceed to trial.

The Court grants Shepherd's motion with respect to the State discrimination claim.

**B. Swegan's Motion for Summary Judgment (ECF No. 20)**

Swegan argues that Shepherd: (1) did not provide her fifteen days to return her medical certification after Shepherd requested it, in violation of 29 C.F.R. § 825.305; (2) did not have a uniformly-applied policy requiring employees to submit fitness-for-duty certifications as a condition of returning to work, in violation of 29 C.F.R. § 825.312; (3) did not, in a FLMA designation notice,

19

(4:11CV02179)

inform Swegan of the essential functions of her position, and that a fitness-for-duty certification would be required before she could return to work, in violation of 29 C.F.R. § 825.300(d); and (4) did not allow Swegan to cure Dr. Bhardwaj's ambiguous certification, in violation of 29 C.F.R. § 825.305(c).  ECF No. 20.  According to Swegan, each of the foregoing violations entitles her to summary judgment on both her FMLA interference and retaliation claims.  ECF No. 20.

Even had Shepherd violated the regulations cited–and the Court does not decide whether it had–the Court cannot enter summary judgment for Swegan.  Regarding an FMLA-interference claim, "[r]elief may be granted only when the loss or harm is '*by reason* of the violation.'"  *Verkade v. United States Postal Service*, 378 Fed. Appx. 567, 575 (6ᵗʰ Cir. 2010) (*quoting* 29 U.S.C. § 2617(a)(1)(A)(i)(I)).  Of course, there could be no loss or harm if Swegan was not entitled to FMLA benefits in the first place.  *Walton v. Ford Motor Co.*, 424 F.3d at 485.  To prevail on her motion, Swegan minimally must demonstrate that reasonable minds could not disagree that she in fact suffered from a "serious health condition" within the meaning of the FMLA.  *See F.D.I.C. v. Jeff Miller Stables*, 573 F.3d 289, 299 (6ᵗʰ Cir. 2009) ("[s]ummary judgment is appropriate where reasonable minds could not disagree as to the conclusion to be drawn from the evidence").  Viewing the evidence, now, in the light most favorable to Shepherd, a reasonable juror could disbelieve that Swegan was incapacitated for more than three days due to her allergic reaction.  Certainly, Swegan has not proffered any irrefutable medical evidence proving incapacity.

Similarly, for summary judgment to enter on Swegan's FMLA-retaliation claim, Swegan must demonstrate the absence of any genuine issue that the aforementioned regulations, if they were violated, were violated with retaliatory motives.  The evidence in this case is not so one-sided as to

20

(4:11CV02179)

compel a single conclusion.  *See Blizzard v. Marion Technical College*, 698 F.3d 275, 282 (6th Cir. 2012) (in summary judgment proceeding court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law" [quotations omitted]).  Shepherd may have failed to comply with regulations for a number of non-discriminatory reasons.

Swegan contends that the manner in which she was discharged is "clear evidence" of a retaliatory motive.  ECF No. 20 at 12.  Swegan claims that, even assuming Shepherd lawfully denied her FMLA request, her twelfth absence could only have resulted from her early departure on August 28–a departure that was ordered  by Montone.  ECF No. 25 at 2-3.  Swegan lists additional evidence of furtive behavior: (1)  Montone required her to produce a fitness-for-duty certificate on August 28 even though Swegan had already returned to work two days earlier; (2) the Handbook required such a certification only from employees returning from FMLA leave, which had been denied to Swegan; and (3) the initial form submitted to Shepherd's human resources department explaining Swegan's termination stated that she was discharged not for attendance reasons, but because she failed "to supply proper [return-to-work] paperwork after requesting FMLA."  ECF Nos. 25 at 1-4; 20-4 at 2.

The Court agrees that Swegan has presented evidence probative of retaliation.  Drawing all reasonable inferences in favor of Shepherd, however, the evidence falls short of being conclusive.  Without delving into detail, the Court finds it sufficient to say at this juncture that reasonable minds could disagree about Shepherd's unstated motivations.  This matter is better left for a jury to decide.

Swegan's motion for summary judgment is denied.

21

(4:11CV02179)

## IV.  Conclusion

Based on the foregoing discussion, the Court denies Shepherd's motion for summary judgment as to both FMLA claims, and grants Shepherd's motion with respect to the State discrimination claim.  The Court denies Swegan's motion for summary judgment in its entirety.

This matter will be scheduled for trial on May 13, 2013.  The Court will issue a separate Civil Trial Order.


IT IS SO ORDERED.

 March 25, 2013                              /s/ Benita Y. Pearson
Date                                        Benita Y. Pearson
                                            United States District Judge